IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RANDY V. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:12-CV-263-WKW |
| | ) | [WO] |
| CITY OF ABBEVILLE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This action involves claims for malicious prosecution brought under 42 U.S.C. § 1983 and state law.  Before the court is Defendants' motion to dismiss, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Docs. # 3, 4.) Plaintiff filed a response (Doc. # 14), to which Defendant replied (Doc. # 15).  For the reasons discussed below, Defendants' motion is due to be granted in part and denied in part.

**I.  JURISDICTION AND VENUE**

Subject matter jurisdiction over this action is exercised pursuant to 28 U.S.C. §§ 1331 and 1441(a).  The parties do not contest personal jurisdiction or venue.

**II.  STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While detailed factual allegations are unnecessary, the standard demands "more than labels and conclusions" and requires something beyond a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Finally, under Rule 12(b)(6), "it is generally true that the 'scope of the review must be limited to the four corners of the complaint.'" *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir.

2

2002)).  In addition to considering the properly pleaded allegations of the complaint, however, the court can consider exhibits attached to the complaint on a motion to dismiss.  *See Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005).  The court also can consider "an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."  *Speaker*, 623 F.3d at 1379; *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (providing that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute").

### III.  FACTS[1]

Plaintiff Randy Williams contends that Defendants City of Abbeville and three of its police officers, namely, Tim Ingram, Colt Ludlam, and Noel Vanlandingham, are to blame for his allegedly malicious prosecution.  The relevant events began in

---

[1] Two things are noted about the facts.  First, because Rule 12(b)(6)'s standard requires the court to construe the facts in the light most favorable to Mr. Williams, these facts "may not be the actual facts."  *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 n.1 (11th Cir. 2006).  Second, the court takes the facts not only from the Complaint, but also from the criminal complaint, the arrest warrant, the search warrant affidavit, and the search warrant.  Although the latter four documents are exhibits to Defendants' motion to dismiss, the court may consider them without converting the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment because they satisfy *Speaker*'s requirements.  *See Speaker*, 623 F.3d at 1379.  Namely, the Complaint refers to the extrinsic documents; the documents are central to Mr. Williams's claims; and Mr. Williams does not contest the documents' authenticity.  *See id.*; *see also Harris*, 182 F.3d at 802 n.2.  Additionally, Mr. Williams did not object when Defendants filed and relied upon these documents.

September 2007.  By that time, Officer Ingram had targeted Mr. Williams, who he believed was a "kingpin drug dealer."  (Compl. ¶ 18.)  Officer Ingram would stop at no means to apprehend Mr. Williams, so says the Complaint.  To achieve the ends, Officer Ingram devised a fraudulent plan, and Officers Ludlam and Vanlandingham knew about the plan.

Officer Ingram coerced an individual, named Rodney B. Danvey, "into making a false statement against" Mr. Williams.  (Compl. ¶ 17.)  Namely, Mr. Danvey falsely reported that Mr. Williams held him up at gunpoint and stole $20.00 and a cell phone from him.

On September 10, 2007, Officer Ingram swore out a criminal complaint against Mr. Williams based upon Mr. Danvey's false statement and obtained an arrest warrant on a "trumped up" charge for first-degree robbery.  The same date, Officer Ingram also signed an affidavit, supported by the same false information, for a warrant to search Mr. Williams's home.  The warrant issued, authorizing a search for the allegedly stolen money and cell phone.

The next day, on September 11, with the arrest and search warrants in hand, Officer Ingram pulled over the vehicle Mr. Williams was driving.  This traffic stop occurred in front of Mr. Williams's home.  Officer Ingram ordered Mr. Williams and his three minor children to get out of the car and on the ground.  Officer Ingram then

radioed for backup and arrested Mr. Williams for first-degree robbery.  About that time, Officers Ludlam and Vanlandingham arrived as backup.  They assisted Officer Ingram in handcuffing Mr. Williams and searching his person.  The three officers then searched Mr. Williams's home, pursuant to the search warrant, as well as Mr. Williams's cars and the property surrounding his home.  The officers recovered no incriminating items as a result of the searches.

After the searches, Officer Ludlam transported Mr. Williams to the city jail, where he remained incarcerated for one-and-a-half days.  The first-degree robbery charge against Mr. Williams was dismissed nearly two-and-a-half years later on February 24, 2010.[2]

## IV.  DISCUSSION

### A.  Plaintiff's Voluntary Dismissal of Certain Claims

The Complaint contains fourteen counts alleging multiple constitutional violations under 42 U.S.C. § 1983 and various state-law claims arising from Mr. Williams's arrest, the searches, and his prosecution.  It seeks recovery from Officers Ingram, Ludlam, and Vanlandingham, in their individual and official capacities, and

---

[2] The Complaint does not reveal what occurred between Mr. Williams's release from jail and the dismissal of the charge.

from the City of Abbeville.  Defendants' motion to dismiss challenges the Complaint in its entirety.

In his brief filed in response to Defendants' motion, Mr. Williams "voluntarily dismisses" all claims, with the exception of the malicious prosecution claims brought under § 1983 and state law (*i.e.*, Counts VI and VII).  (Doc. # 14, at 1.)  Not surprisingly, Defendants do not object to the partial dismissal.

It is appropriate to construe Mr. Williams's response to Defendants' motion to dismiss as containing a notice of voluntary dismissal, as Defendants have not filed answers or motions for summary judgment.  *See* Fed. R. Civ. P. 41(a)(1)(A)(i) (providing that "an action may be dismissed by the plaintiff without order of court . . . by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs").  This opinion addresses, therefore, only the federal-law and state-law malicious prosecution claims in Counts VI and VII.

## B.    § 1983 Malicious Prosecution (Count VI)

A section 1983 claim for malicious prosecution arises under the Fourth Amendment.  *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010).  In *Grider*, the Eleventh Circuit set forth the claim's elements:

To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. As to the first prong, the constituent elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.

*Id.* (internal citations and emphasis omitted).

Defendants assert six grounds for dismissal of the § 1983 malicious prosecution claim. These grounds focus on the first *Grider* prong with respect to the malice requirement, on the second *Grider* prong, on immunity defenses, and on the City's liability. The court addresses the arguments separately as they pertain to each Defendant, beginning with Officer Ingram, continuing with Officers Ludlam and Vanlandingham, and concluding with the City.

### 1.   *Officer Ingram*

#### a.   The Unreasonable Seizure Requirement

Defendants argue that the Complaint does not plausibly allege that Officer Ingram violated Mr. Williams's Fourth Amendment right to be free from an unreasonable seizure. *See Grider*, 618 F.3d at 1256. They contend, without reasoning or citation to authority, that Mr. Williams "was arrested pursuant to a valid

warrant." (Doc. # 4, at 39.)  Mr. Williams responds that the arrest warrant is invalid

because it is premised upon a false sworn statement.

In the seminal case of *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme

Court of the United States held that where an officer knowingly and intentionally, or

with reckless disregard for the truth, submits a false sworn statement to secure a

warrant and the statement is necessary to the finding of probable cause, the warrant

is void under the Fourth Amendment for want of probable cause.[3]  *Id.* at 164.  The

Court reasoned that the Fourth Amendment's mandate that a "warrant not issue 'but

upon probable cause, supported by Oath or affirmation,' would be reduced to a nullity

if a police officer was able to use deliberately falsified allegations to demonstrate

probable cause, and, having misled the magistrate, then was able to remain confident

that the ploy was worthwhile."  *Id.* at 168 (citation and internal quotation marks

omitted).  The Eleventh Circuit has applied *Franks* in § 1983 Fourth Amendment

actions challenging the validity of warrants.  *See Madiwale v. Savaiko*, 117 F.3d

1321, 1326–27 (11th Cir. 1997) (analyzing a § 1983 Fourth Amendment claim that

material omissions rendered a warrant devoid of probable cause in light of *Franks*);

*see also Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994) (recognizing in a § 1983

---

[3] Although *Franks* involved a search warrant, the Eleventh Circuit has applied its rule in a case challenging an arrest warrant as improperly obtained.  *See Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994).

action that the Fourth Amendment "prohibits an officer from making perjurious or recklessly false statements in support of a warrant." (citing *Franks*, 438 U.S. at 165–71)).

Based upon the foregoing authority, to demonstrate an unreasonable seizure in violation of the Fourth Amendment, Mr. Williams must sufficiently allege (1) that Officer Ingram secured the arrest warrant based upon a criminal complaint that he knew contained misstatements made intentionally or with reckless disregard for the truth, and (2) that absent the alleged misstatements, probable cause for the warrant was lacking.[4]

Accepted as true, the facts establish that Officer Ingram forced Mr. Danvey to make a false statement that Mr. Williams had robbed Mr. Danvey at gunpoint and that Officer Ingram knew the statement was false. The facts further show that Officer Ingram used Mr. Danvey's false statement to obtain a warrant for Mr. Williams's arrest on a bogus, first-degree robbery charge. In short, these facts establish that Officer Ingram swore to facts that he knew were fraudulent in order to obtain the

---

[4] Although Mr. Williams alleges at one point that the "*officers* falsified affidavits," as opposed to just Officer Ingram (Compl. ¶ 19 (emphasis added)), such conclusory allegations "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The warrants themselves establish that Officer Ingram, not Officers Ludlam and Vanlandingham, signed both the criminal complaint in support of the arrest warrant the search warrant affidavit. Officer Ludlam's and Officer Vanlandingham's alleged involvement is discussed in Part IV.A.2.

arrest warrant, and the totality of the facts reasonably imply the arrest warrant issued solely on the basis of Officer Ingram's perjurious submission.

Defendants do not confront the allegations of perjury in their opening brief. Similarly, they do not argue that the criminal complaint contained sufficient information to establish probable cause for an arrest, absent these allegedly perjurious statements. *See Franks*, 438 U.S. at 155–56. Based on the facts alleged and absent contrary argument from Defendants, the court finds that there are plausible allegations that the arrest warrant lacks probable cause based upon application of *Franks*. Accordingly, the Complaint sufficiently alleges a violation of Mr. Williams's right to be free from an unreasonable seizure, as required under the second *Grider* prong.

### b.    The Malice Requirement

Advancing two arguments, Defendants contend that the Complaint does not plausibly allege that Officer Ingram acted with malice for purposes of a common-law tort of malicious prosecution. Neither argument has merit.

Defendants' first argument concerns the legal standard for analyzing malice. Defendants assert that, "[a]lthough Alabama generally allows a jury to infer malice from the absence of probable cause," Alabama's standard should not govern in a § 1983 action for malicious prosecution. (Doc. # 4, at 38.) Defendants do not offer

an alternative standard, however.  Mr. Williams does not address this legal argument, but rather argues generally that he sufficiently alleges malice based on allegations that Officer Ingram knowingly submitted a false statement to obtain a warrant.  The court then must resolve the threshold issue concerning the appropriate legal standard for analyzing malice.

In *Grider*, the Eleventh Circuit recognized that, although ultimately federal law governs the elements of a § 1983 malicious prosecution claim, state law can "help inform the elements of the common law tort of malicious prosecution."  618 F.3d at 1256 (citation and internal quotation marks omitted); *see also Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) ("As to the constituent elements of the common law tort of malicious prosecution, this Court has looked to both federal and state law and determined how those elements have historically developed.").  Hence, in § 1983 actions, the Eleventh Circuit has defined the elements of the common-law tort of malicious prosecution by incorporating the forum state's law as part of the federal common law.  *See, e.g.*, *Angiolillo v. Collier Cnty.*, 394 F. App'x 609, 614 (11th Cir. 2010) (referring to Florida law); *Wood*, 323 F.3d at 881 (observing that previously it had examined federal and Georgia law in defining the elements of a common-law tort of malicious prosecution (citing *Uboh v. Reno*, 141 F.3d 1000, 1002–04 (11th Cir. 1998)).  *Grider*, in particular, indicated that the element of malice is the "same"

11

under federal common law and under Alabama common law for the tort of malicious prosecution. 618 F.3d at 1256; *see also Ruffino v. City of Hoover*, No. 2:08cv2, 2012 WL 3744654, at *19 (N.D. Ala. Aug. 29, 2012) (defining malice for purposes of a § 1983 malicious prosecution claim in accordance with Alabama law). Based upon the foregoing authority and absent Defendants' failure to cite any binding or persuasive authority to the contrary, the court will refer to Alabama law to define malice for purposes of a § 1983 malicious prosecution claim.

Under Alabama law, on a claim for malicious prosecution, "[m]alice may be inferred from the want of probable cause," provided the defendant did not act in good faith, "or from defendant's conduct, where such conduct will admit of no other reasonable construction." *Willis v. Parker*, 814 So. 2d 857, 864 (Ala. 2001). Furthermore, the element of malice does not require proof of "personal ill will, hate, desire for revenge, or other base and malignant passion." *Lunsford v. Dietrich*, 9 So. 308, 310 (Ala. 1891); *accord Hunter v. Mooring Tax Asset Group, LLC*, 53 So. 3d 879, 886 (Ala. 2009). Rather, "'[w]hatever is done willfully and purposely, whether the motive be to injure the accused, to gain some advantage to the prosecutor, or through mere wantonness or carelessness, if at the same time wrong and unlawful within the knowledge of the actor, is within legal contemplation maliciously done.'"

*Shoney's, Inc. v. Barnett*, 773 So. 2d 1015, 1026 (Ala. Civ. App. 1999) (quoting *S.S. Kresge Co. v. Ruby*, 348 So. 2d 484, 489 (Ala. 1977)).

Here, taken as true, the facts establish that Officer Ingram knew that Mr. Williams did not commit the crime of first-degree robbery and that, therefore, probable cause for an arrest warrant did not exist. Officer Ingram, therefore, fabricated probable cause for that crime by procuring a false statement from a witness and then submitted that false statement in order to obtain a warrant for Mr. Williams's arrest. These facts, which lack any sustainable indication of good faith, show that Officer Ingram engaged in willful and purposeful conduct to obtain a warrant he knew was not supported by probable cause. They plausibly show malice in accordance with Alabama law.[5]

Defendants contend otherwise, however. Namely, their second argument, which is factual in nature, is that paragraph 18 of the Complaint negates any inference of malice. In that paragraph, the Complaint alleges that Officer Ingram's "sole purpose" in coercing a witness to "mak[e] a false statement against Mr. Williams" was "to gain access to [Mr. Williams's] residence, property and vehicles because of

---

[5] This analysis omits the Complaint's allegations that are not subject to a presumption of truth because they are conclusory, *see Iqbal*, 556 U.S. at 679. (*See, e.g.*, Am. Compl. ¶ 76 (pleading that Officer Ingram "acted with malice or under such circumstances that the law will imply malice"; *see also* Am. Compl. ¶ 21 (Officer Ingram "maliciously brought robbery charges against" Mr. Williams.).)

[his] belief that [Mr.] Williams was an alleged kingpin drug pusher." (Compl. ¶ 18.) Defendants contend that "[t]his allegation demonstrates that the officers were motivated not by malice, but by a legitimate law enforcement goal." (Doc. # 4, at 38–39.) Defendants' argument, which rests on an "ends justifies the means" rationale, is that a law enforcement official does not act with malicious intent when he fabricates information submitted in support of a warrant so long as the motive for the fabrication is the capture of an assumed illicit drug dealer.

It is true that the Supreme Court of Alabama has held that "[w]ith regard to the element of 'malice' in an action for malicious prosecution, '[a]ny other motive than a bona fide purpose to bring the accused to punishment as a violator of the criminal law or another purpose associated with such bona fide purpose is malicious.'" *Ennis v. Beason*, 537 So. 2d 17, 20 (Ala. 1988) (quoting *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133, 140 (Ala. 1983)). Here, the arrest warrant did not issue against Mr. Williams on a drug trafficking charge, but rather on an allegedly falsified first-degree robbery charge. An officer's fabrication of evidence for a bogus first-degree robbery charge in order to obtain an arrest warrant to achieve the ends of apprehending a suspected drug trafficker simply is not the type of "bona fide purpose" contemplated by *Bowen*. *See Central Iron & Coal Co. v. Wright*, 101 So. 815, 818 (Ala. App. 1924) ("If the arrest was made without probable cause therefor,

14

then it could not have been made for the bona fide purpose of bringing the accused to punishment as a violator of the criminal law . . . .").  To the contrary, the facts alleged present precisely the circumstances that imply a "malicious motive."  *Cf. Bowen*, 447 So. 2d at 140 (obtaining "an indictment by procuring and giving false evidence before a grand jury shows a malicious motive" for purposes of a malicious prosecution claim); *Shoney's, Inc. v. Barnett*, 773 So. 2d 1015, 1027 (Ala. Civ. App. 1999) (opining that a jury "could have concluded that [the defendant] acted with malice simply because she testified falsely at [the plaintiff's] preliminary hearing").  Moreover, Defendants' argument ignores the inference of malice that arises from the absence of probable clause.  Much like in *Franks* and to borrow its reasoning, the malice requirement for a malicious prosecution claim "would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile." 438 U.S. at 168 (citation and internal quotation marks omitted).

For the foregoing reasons, the court finds that the Complaint sufficiently alleges the malice element of a common-law malicious prosecution claim, as required under *Grider*'s first prong.  Defendants' motion to dismiss on this ground is due to be denied.

### c.    State-Agent Immunity

Defendants argue, again without citation to authority, that the Complaint does not plausibly allege malice sufficient to deprive Officer Ingram of state-agent immunity under Alabama law.  *See generally Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000) (discussing state-agent immunity).  Defendants' argument essentially is that state-agent immunity is a defense that precludes Mr. Williams from satisfying the elements of the common-law tort of malicious prosecution under § 1983.  Mr. Williams responds that the Complaint's allegations are sufficient to overcome state-agent immunity.  Both arguments miss the mark.

State-law immunity defenses have no bearing on liability under § 1983.  Rather, federal law controls whether an individual is immune from § 1983 liability.  In *Howlett v. Rose*, the Supreme Court of the United States held that in a § 1983 action brought in state court, the defendants could not receive state-law immunity "over and above" that permitted by § 1983 because the defenses to federal causes of action are defined by federal, not state law.  496 U.S. 356, 375 (1990); *see also id.* at 376 ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law." (citations and internal quotation marks omitted)); *see also Haywood v. Drown*, 556 U.S. 720, 737 n.5 (2009) (reaffirming its holding in *Howlett* and noting that "[f]ederal law governs the

16

immunity in [§ 1983] actions, even when brought against state officials" (citation and internal quotation marks omitted)).

The Eleventh Circuit has cited *Howlett* for the principle that "when parties raise *federal* claims (at least, under Section 1983), then federal law must determine whether particular governmental entities are subject to suit." *Hufford v. Rodgers*, 912 F.2d 1338, 1341 n.1 (11th Cir. 1990). In *Hufford*, an action initiated in federal court, the Eleventh Circuit concluded that "[s]tate sovereign immunity may protect Sheriff Rodgers from state claims in state court; state immunity, however, has no application to claims, in federal court, under Section 1983." *Id.* at 1341; *see also Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010) ("The issue of immunity . . . differs as between the state and federal law claims. As to the claim for malicious prosecution under § 1983, federal law of immunity applies.").

The foregoing principles dictate the same result in this case. The fact that a § 1983 malicious prosecution claim in effect incorporates state-law elements for one of its prongs does not alter or diminish the claim's federal-law status. *See Grider*, 618 F.3d at 1256 ("'[A]lthough both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim.'"). Because the § 1983 malicious prosecution claim arises under federal law, federal law

17

determines a defendant's immunity from suit.  Hence, Officer Ingram may not rely on state-agent immunity to defeat the § 1983 malicious prosecution claims against him individually.

### d.   Qualified Immunity

Officer Ingram also raises qualified immunity as a defense to § 1983 liability. That defense is not appropriate, however, on the Complaint's facts.

"To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." *Grider*, 618 F.3d at 1257.  Arguable probable cause exists where "under all of the facts and circumstances, an officer reasonably could – not necessarily would – have believed that probable cause was present." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).  Conversely, arguable probable cause does not exist "where 'a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'" *Kelly*, 21 F.3d at 1553 (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)).  In *Kelly*, the Eleventh Circuit held that *Franks* clearly established for purposes of the qualified immunity analysis that an officer violates the Fourth Amendment if he or she commits perjury in an affidavit to obtain a warrant. *See id.* at 1554 (citing *Franks*, 438 U.S. at 165); *see also Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999) ("[T]he law was clearly established in 1993 that the

18

Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest.").

*Kelly* is instructive here.  In *Kelly*, a police officer swore out an arrest warrant affidavit against the § 1983 plaintiff for possession of cocaine, notwithstanding that the officer knew that the state crime lab had issued a report that the substance the plaintiff possessed was not cocaine.  *See* 21 F.3d at 1548.  The Eleventh Circuit held that the officer's "affirmative misstatement violate[d] *Franks*" because "the information she swore to in the affidavit was not 'believed or appropriately accepted by the affiant as true.'"  *Id.* at 1555 (quoting *Franks*, 438 U.S. at 166).  The officer, therefore, was not entitled to qualified immunity.  *See id*.

By comparison, if, as alleged, Officer Ingram knowingly fabricated the information he submitted in support of an arrest warrant and that false information was the only information that connected Mr. Williams to an armed robbery and possession of stolen property, a reasonably well-trained officer would have known that probable cause was lacking for the arrest warrant and that any subsequently obtained warrant would violate the Fourth Amendment.  Under these allegations, Officer Ingram is not entitled to qualified immunity.[6]

---

[6] While Officer Ingram is not entitled to qualified immunity on the Rule 12(b)(6) facts, he may reassert the defense on summary judgment or at trial, if appropriate.

### 2.     *Officers Ludlam and Vanlandingham*

Defendants' grounds for dismissal of the § 1983 malicious prosecution claim against Officers Ludlam and Vanlandingham rest on the first element of the common-law tort of malicious prosecution. Under this element, a plaintiff must show that the "criminal prosecution [was] instituted or continued by the present defendant." *Grider*, 618 F.3d at 1256. Defendants contend that the facts establish that Officer Ingram, not Officers Ludlam and Vanlandingham, obtained the arrest warrant on the basis of the allegedly false statements and that, therefore, the Complaint does not plausibly allege that Officers Ludlam and Vanlandingham instituted or continued a criminal prosecution against Mr. Williams. (Doc. # 4, at 39 (citing Compl. ¶ 11).) Borrowing from Alabama law, Defendants rely on *Cutts v. American United Life Insurance Co.*, which recognized that "[g]enerally, in an action for malicious prosecution, Alabama law allows recovery only from those who are *directly responsible* for the prosecution." 505 So. 2d 1211, 1215 (Ala. 1987). Mr. Williams does not counter Defendants' argument, either legally or factually. Instead, he ignores it.

At best, the facts establish that Officers Ludlam and Vanlandingham knew that Officer Ingram "coerced" a witness to "mak[e] a false statement" that Mr. Williams had robbed him. (Compl. ¶ 17.) There are no plausible facts that either Officer

Ludlam or Officer Vanlandingham signed a sworn statement or affidavit in support of a warrant or otherwise engaged in affirmative conduct that commenced or continued a criminal prosecution against Mr. Williams.  Additionally, Mr. Williams does not assert any other basis for finding that Officers Ludlam and Vanlandingham were directly responsible for his prosecution.  And there "is no burden upon the district court to distill every potential argument that could be made based upon the materials before it . . . ."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  Accordingly, Mr. Williams's § 1983 malicious prosecution claim against Officers Ludlam and Vanlandingham is due to be dismissed.

### 3.    *The City*

Defendants argue that Count VI, the only count containing a § 1983 malicious prosecution claim, is not viable against the City because this count neither identifies the City as a defendant nor suggests a cognizable theory of municipal liability.  Mr. Williams does not address these contentions or make any argument whatsoever that the Complaint states a viable theory of municipal liability against the City.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Here, Count VI includes no mention of the City, either directly or indirectly, or allegations suggesting that the City is liable under a theory of municipal liability for a § 1983 Fourth Amendment

violation stemming from an allegedly malicious prosecution.  *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (addressing the elements of a § 1983 municipal liability claim).  Count VI simply fails to allege any statement of a § 1983 malicious prosecution claim against the City.

Accordingly, to the extent that Mr. Williams seeks to sue the City under § 1983 for malicious prosecution, that claim is due to be dismissed for failure to state a claim for which relief can be granted.[7]  Alternatively, the court finds that Mr. Williams has abandoned his § 1983 malicious prosecution claim against the City.  *Cf. Resolution Trust*, 43 F.3d at 599 (holding that "grounds alleged in the complaint but not relied upon in [opposition to] summary judgment are deemed abandoned").

---

[7] Dismissal of the City also is tantamount to dismissal of the official-capacity claims against the individual officers.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

C.   **State-Law Malicious Prosecution (Count VI)**

Defendants assert three grounds for dismissal of the state-law malicious prosecution claim in Count VII.   The court again addresses the arguments separately for each Defendant.

### 1.   *Officer Ingram*

Defendants move to dismiss the state-law malicious prosecution claim against Officer Ingram on the basis of state-agent immunity.   *See* Ala. Code § 6-5-338. Alabama's state-agent immunity does not apply for "acts taken willfully, maliciously, fraudulently, in bad faith, beyond authority, or under a mistaken interpretation of law."   *Grider*, 618 F.3d at 1259 (citing, among other cases, *Ex parte Cranman*, 792 So. 2d at 405 (addressing Alabama's state-agent immunity)).   In *Grider*, the Eleventh Circuit held that under Alabama law, state-agent immunity did not shield an officer from liability on a malicious prosecution claim where the facts demonstrated "lack of arguable probable cause and malice."   618 F.3d at 1259 (citing by analogy *Borders v. City of Huntsville*, 875 So. 2d 1168, 1180, 1182 (Ala. 2003) (holding that evidence that a police officer acted without arguable probable cause and with malice deprived that officer of statutory, discretionary-function immunity from a malicious prosecution claim)).

As discussed in the context of the § 1983 malicious prosecution claim, the Rule 12(b)(6) facts are sufficient to infer malice on Officer Ingram's part and to show that he lacked arguable probable cause in seeking the arrest warrant. For the same reasons, Officer Ingram is not entitled to state-agent immunity on the state-law malicious prosecution claim at this stage of the proceedings.

### 2. *Officers Ludlam and Vanlandingham*

Defendants also argue that the Complaint fails to state a malicious prosecution claim against Officers Ludlam and Vanlandingham. Their argument again focuses on the lack of allegations of Officers Ludlam's and Vanlandingham's involvement, this time with respect to the commencement of a judicial proceeding against Mr. Williams. Mr. Williams fails to respond to this argument with respect to Count VII, just as he failed to respond to this argument with respect to Count VI.

To establish a malicious prosecution claim under Alabama law, a plaintiff must show, among other things, "that a prior judicial proceeding was instituted by the present defendant."[8] *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831 (Ala. 1999). As

---

[8] As compared to a § 1983 malicious prosecution claim, a malicious prosecution claim under Alabama law differs in that it requires "only a 'judicial proceeding' not a 'criminal prosecution.'" *Grider*, 618 F.3d at 1256 (quoting *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831 (Ala. 1999)). That distinction is not one that makes a difference here. Defendants' argument for dismissal of both the § 1983 and state-law malicious prosecution claims is that the Complaint fails to allege any theory of involvement by Officers Ludlam and Vanlandingham, not that it fails to allege a criminal prosecution or judicial proceeding.

discussed in the context of the § 1983 claim, the allegations establish, at most, that Officers Ludlam and Vanlandingham knew that Officer Ingram coerced Mr. Danvey into making a false statement implicating Mr. Williams in a made-up crime, not that they signed the criminal complaint in support of the arrest warrant. Just as with the § 1983 malicious prosecution claim, Mr. Williams similarly fails to show that these two officers were "directly responsible" for a judicial proceeding against Mr. Williams. *Cutts*, 505 So. 2d at 1215. This element fails, therefore, for essentially the same reason that it failed under its § 1983 common-law counterpart. Count VII against Officers Ludlam and Vanlandingham is due to be dismissed.

### 3.    *The City*

Identical to the argument they raised with respect to the City's liability as to Count VI, Defendants contend that the City also is not named as a defendant in Count VII. Alternatively, Defendants assert that the City is immune from liability based upon § 11-47-190 of the Alabama Code. Mr. Williams does not address these contentions.

The City's dismissal is appropriate for two reasons. First, Count VII does not identify the City as a defendant. Based on the absence of allegations in Count VII implicating the City, as well as Mr. Williams's seeming abandonment of this claim, the court finds that Count VII fails to plead a plausible claim against the City.

Second, it is well settled in Alabama that § 11-47-190 precludes liability against a City for malicious prosecution. *See Walker v. City of Huntsville*, 62 So. 3d 474, 502 (Ala. 2010) (holding that under § 11-47-190, a city cannot be held liable for malicious prosecution (citing *Neighbors v. City of Birmingham*, 384 So. 2d 113, 501 (Ala. 1980)).

Accordingly, Count VII is due to be dismissed against the City.  Count VII also is due to be dismissed against the individual officers in their official capacities, *see supra* note 7.

## V. CONCLUSION

Mr. Williams has dismissed voluntarily all but his § 1983 and state-law malicious prosecution claims.  These remaining claims go forward as to Officer Ingram in his individual capacity, but not as to Officers Ludlam, Vanlandingham, or the City of Abbeville.  Accordingly, it is ORDERED as follows:

(1)   Mr. Williams's response to Defendants' motion to dismiss is CONSTRUED as containing a notice of voluntary dismissal of all counts except Counts VI and VII, pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure;

(2)    Defendants' motion to dismiss is GRANTED as to the § 1983 and state-law malicious prosecution claims in Count VI and VII against Officers Ludlam and

Vanlandingham in their individual and official capacities, Officer Ingram in his official capacity, and the City of Abbeville; and

(3)     Defendants' motion to dismiss is DENIED as to the § 1983 and state-law malicious prosecution claims in Counts VI and VII against Officer Ingram in his individual capacity.

DONE this 18th day of March, 2013.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE