IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RANDY V. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:12-CV-263-WKW |
| | ) | [WO] |
| TIM INGRAM, in his individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Randy V. Williams brings this action against Officer Tim Ingram of the Abbeville Police Department on claims of malicious prosecution under 42 U.S.C. § 1983 for a Fourth Amendment violation and under state law. Before the court is Officer Ingram's motion for summary judgment. (Doc. # 23.) The motion has been fully briefed. (Docs. # 24, 28, 31.) Based upon careful consideration of the arguments of counsel, the relevant law, and the evidence, the court finds that the motion is due to be granted.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1367. Personal jurisdiction and venue and are not contested.

## II.  STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id.*; Fed. R. Civ. P. 56(c)(1)(A).  Or, the movant can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact.  Fed. R. Civ. P. 56(c)(1)(B).  If the movant meets its burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists.  *Celotex*, 477 U.S. at 324.  A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor.  *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III.  BACKGROUND

### A.  <u>Facts</u>

The evidence, viewed in the light most favorable to Mr. Williams, establishes the following.[1]  By September 2007, Officer Ingram of the Abbeville Police Department had received information from several informants that Mr. Williams was selling drugs in the Abbeville area.  (Ingram's Dep., at 54.)  This information led Officer Ingram to conclude that Mr. Williams was a "kingpin drug dealer."  (Ingram's Dep., at 93 ("I believe Mr. Williams to be a kingpin drug dealer.").)  As a result, Officer Ingram decided to set up a controlled narcotics buy using an informant who was an acquaintance of Mr. Williams.  (Ingram's Dep., at 54, 57.)  Officer Ingram had used this informant to make controlled buys in the past, and the informant had been reliable "in those prior cases."  (Ingram's Dep., at 99; *see also* Ingram's Decl. ¶ 4 ("I have always found [the informant] to be a reliable informant.").)

The controlled buy was to take place on Friday, September 7, 2007.  On that date, Officer Ingram gave the informant a $20 bill with recorded serial numbers and a cellular telephone to call Officer Ingram after the completion of the drug

---

[1] The evidence includes declarations from Officer Ingram and the informant, excerpts from Officer Ingram's and Mr. Williams's deposition testimonies, Mr. Williams's answers to Officer Ingram's request for admissions, the informant agreement between the Abbeville Police Department and the informant, the Alabama Uniform Incident/Offense Report, the criminal complaint, arrest warrant, affidavit for search warrant, search warrant, indictment, and case action summary.

transaction.  Instead of reporting a successful drug buy, however, on the following Monday, September 10, the informant reported to Officer Ingram that Mr. Williams had robbed him at gunpoint with a "black steel pistol" on September 7, around 2:00 p.m., and had stolen the $20 bill and the phone.  (Ingram's Decl. ¶¶ 7–14.)  The informant relayed the details of the robbery to Officer Ingram.  Officer Ingram documented those details in an Alabama Uniform Incident/Offense Report ("offense report"), and the informant signed the offense report to certify its truth.  (Ingram's Decl. ¶ 18; Offense Report (Doc. # 24-4).)  Officer Ingram also asked the informant to accompany him to the scene of the alleged robbery to verify the details.

Based upon the informant's narrative of the robbery events, Officer Ingram signed a criminal complaint, charging Mr. Williams with robbery in the first degree, in violation of § 13A-8-41 of the Alabama Code.  *See* Ala. Code § 13A-8-41 (providing, in part, that "[a] person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he . . . [is] armed with a deadly weapon or dangerous instrument").  (Criminal Compl. (Doc. # 24-4).)  Officer Ingram also gave the magistrate a copy of the offense report to support probable cause.  (Ingram's Decl. ¶ 20.)  Based upon this information, the magistrate issued a warrant for Mr. Williams's arrest on September 10.  (Warrant (Doc. # 24-4).)  Additionally, on September 11, and on the basis of the informant's statement,

4

Officer Ingram obtained a warrant to search Mr. Williams's residence for the $20 bill, the cell phone, and "other contraband or controlled substances." (Pl.'s Summ. J. Br., Ex. 2 (Doc. # 28-3).)   That same day, Officer Ingram executed the arrest and search warrants on Mr. Williams and his residence, but did not recover the $20 bill, the cell phone, or any contraband.   Upon his arrest, Mr. Williams was transported to the city jail, where he remained for approximately a day-and-a-half before being released on bond.

In March 2008, a Henry County district judge held a preliminary hearing at which the informant testified and was subject to cross-examination by Mr. Williams's counsel.  After the hearing, the district judge found probable cause for Mr. Williams's arrest, and his case was bound over to the grand jury.   In September 2008, the grand jury of Henry County returned an indictment against Mr. Williams for robbery in the first degree.  For reasons not in the record, the first-degree robbery charge against Mr. Williams was dismissed "on motion of State" on February 24, 2010. (Pl.'s Summ. J. Br., Ex. 4 (Doc. # 28-5).)

## B.   <u>Procedural History</u>

Mr. Williams originally filed this action in the Circuit Court of Henry County, Alabama, against the City of Abbeville and three officers, including Officer Ingram.  The Complaint alleged that Mr. Williams's arrest and prosecution, as well as the search of his home, violated his constitutional rights protected by

federal civil rights statutes, including 42 U.S.C. § 1983, and also violated state law. Defendants removed the action to the United States District Court for the Middle District of Alabama and filed a motion to dismiss.  In response to the motion to dismiss, Mr. Williams voluntarily dismissed all but his claims for malicious prosecution under § 1983 and state law (*i.e.*, Counts VI and VII).  *See* Fed. R. Civ. P. 41(a)(1)(A)(i).   The ruling on the motion to dismiss then narrowed the defendants from four to one, and it denied the motion as to the malicious prosecution claims under § 1983 and state law against the remaining Defendant, Officer Ingram, in his individual capacity.[2]  (*See* Order (Doc. # 16).)

## C.   Mr. Williams's Theories of Malicious Prosecution

At the outset, it is helpful to set out the parameters of the malicious prosecution claims.  Two theories of malicious prosecution have arisen during the course of this litigation, and both the federal- and state-law malicious prosecution claims are based upon these twin theories.

First, there is the theory set out in the Complaint.  The malicious prosecution claims, under both federal and state law, allege that Officer Ingram initiated a criminal prosecution[3] against Mr. Williams by maliciously obtaining an arrest

---

[2] The official-capacity claim was dismissed.

[3] A § 1983 malicious prosecution claim requires a judicial proceeding, while a state-law malicious prosecution claim requires a criminal prosecution.  *See Grider*, 618 F.3d at 1256.  That distinction is not significant in this case because Officer Ingram does not contend that there is an absence of evidence of a criminal prosecution or a judicial proceeding.

warrant based upon a fabricated sworn statement.  The theory is that Officer Ingram "coerced" the informant "into making a false statement against" Mr. Williams in order to arrest him, search his home, and obtain a conviction on a "trumped up" charge of first-degree robbery as a subterfuge to lock up an "alleged kingpin drug pusher." (Compl. ¶¶ 17–19.)  This also is the theory upon which Mr. Williams relied at the motion-to-dismiss stage.  And he continues to assert at the summary-judgment stage that Officer Ingram "coerced [the informant] into making a false statement" and that Officer Ingram then used that statement to obtain an arrest warrant, thereby initiating the criminal prosecution.  (*See* Pl.'s Summ. J. Br., at 11–13.)

Second, Mr. Williams articulates for the first time in his summary judgment briefing that the information obtained from the informant was insufficient to establish probable cause because the informant was, among other things, a drug addict with a criminal history.  (Pl.'s Summ. J. Br., at 4, 6, 12–13.)  This theory is different from the Complaint's theory that the false statement about the robbery was the product of police coercion.  There is some question whether this new theory properly is before the court.  *See Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  However, Officer Ingram addresses the issue surrounding the reliability of the

informant in his summary judgment analysis of probable cause, and there is no indication that Officer Ingram will suffer any prejudice from the court's consideration of the claim.  Both theories will be addressed in this opinion.[4]

## IV. DISCUSSION

Officer Ingram, in his individual capacity, moves for summary judgment on the § 1983 and state-law malicious prosecution claims on the merits and based upon immunity doctrines.  Mr. Williams argues against summary judgment as to these claims.[5]  For the reasons that follow, Mr. Williams fails to raise a genuine dispute of material fact that his arrest for first-degree robbery was not supported by probable cause, an essential element of both his § 1983 and state-law malicious

---

[4] To the extent that Mr. Williams alleges a third theory – that Officer Ingram is liable under § 1983 for malicious prosecution because he knowingly falsified his testimony before the grand jury (Pl.'s Summ. J. Br., at 11) –  that claim is not in the Complaint, and, additionally, "a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony."  *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012).

[5] Oddly, Mr. Williams also opposes summary judgment as to his § 1983 false arrest claim that he previously voluntarily dismissed.  (*See* Order, at 26 (Doc. # 16).)  The § 1983 false arrest claim is not addressed in this opinion because that claim is no longer part of this action, and it cannot be resurrected in a brief opposing summary judgment.  In *Carter v. Gore*, the Eleventh Circuit succinctly explained the distinction, as relevant here, between a § 1983 false arrest and malicious prosecution claim.  *See* ___ F. App'x ____, No. 13–11629, 2014 WL 783151, at *2 (11th Cir. Feb. 28, 2014) ("The issuance of a warrant – even an invalid one as [plaintiff] alleges was issued here – constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest.").  For purposes of a § 1983 malicious prosecution, an officer who obtains an arrest warrant without probable cause is "liable for all foreseeable injuries flowing from the officer's initial act, regardless of further involvement."  *Id.* (citing *Whiting v. Traylor*, 85 F.3d 581, 586 (11th Cir. 1996)).

prosecution claims.  Alternatively, Officer Ingram is entitled to qualified immunity under § 1983 and state-agent immunity under Alabama law.

**A.    § 1983 Malicious Prosecution Claim**

The analysis of the § 1983 malicious prosecution claim proceeds in three parts.  The first part sets out the general principles of law governing § 1983 malicious prosecution claims and qualified immunity.  The second part analyzes Mr. Williams's malicious prosecution theory that Officer Ingram made false statements in support of the arrest warrant.  The third part analyzes Mr. Williams's theory that the information obtained from the informant was unreliable and, thus, insufficient to supply probable cause for Mr. Williams's arrest.

### 1.    *General Principles*

#### a.    **The Elements of a Malicious Prosecution Claim**

A § 1983 claim for malicious prosecution arises under the Fourth Amendment.  *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010).  The Eleventh Circuit has described a § 1983 malicious prosecution claim as one "where the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment and injuries, due to that seizure, follow as the prosecution goes ahead." *Whiting*, 85 F.3d at 583.  In *Grider*, the Eleventh Circuit set forth the claim's elements:

> To establish a § 1983 malicious prosecution claim, the plaintiff must
> prove two things: (1) the elements of the common law tort of

9

malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures.  As to the first prong, the constituent elements of the common law tort of malicious prosecution are:  (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. . . .

As to the second prong, it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment.  Consequently, the existence of probable cause defeats a § 1983 malicious prosecution claim.

618 F.3d at 1256 (internal citations and emphasis omitted).

"For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances."  *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003) (analyzing a § 1983 malicious prosecution claim) (citation and internal quotation marks omitted).  "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Id.* (internal quotation marks omitted).  "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction."  *Id.* (citation and internal quotation marks omitted).  Indeed, "[t]he Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant

10

acquitted – indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

### b.   Qualified Immunity

The defense of qualified immunity involves a two-step inquiry.  The first inquiry is "whether the defendant government official was performing a discretionary function" when the allegedly wrongful acts occurred.  *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997).  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  This is the second inquiry and is itself a two-part test.  "[T]he plaintiff must . . . show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Townsend v. Jefferson Cnty*, 601 F.3d 1152, 1157 (11th Cir. 2010) (internal citation omitted).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Moreover, in a Fourth Amendment malicious prosecution case, "to receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." *Grider*, 618 F.3d at 1257; *see also id.* at 1257 n.25

(noting that it applies "the same 'arguable probable cause' standard in the qualified immunity context for § 1983 claims for both false arrest and malicious prosecution, as both require a violation of the Fourth Amendment").  Arguable probable cause exists where "under all of the facts and circumstances, an officer reasonably could – not necessarily would – have believed that probable cause was present." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). Conversely, arguable probable cause does not exist "where 'a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'" *Kelly v. Curtis*, 21 F.3d 1544, 1553 (11th Cir. 1994) (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)).  "[W]hat counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999).

## 2.  *The Alleged False Statements Submitted in Support of the Arrest Warrant*

Mr. Williams's first malicious prosecution theory is that Officer Ingram knowingly fabricated the statement he submitted to obtain the arrest warrant that resulted in Mr. Williams's seizure and started in motion the machinery of a criminal prosecution.  In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme

Court of the United States held that the Fourth Amendment is violated where an officer, knowingly and intentionally or with reckless disregard for the truth, submits a false sworn statement to secure a warrant and the statement is necessary to the finding of probable cause. *Id.* at 155–56. "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing." *Id.* at 164. The statements submitted in support of the warrant need not actually be true, but they must "be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* at 165. The Court reasoned that the Fourth Amendment's mandate that a "warrant not issue 'but upon probable cause, supported by Oath or affirmation,' would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile." *Id.* at 168 (citation and internal quotation marks omitted).

The Eleventh Circuit has applied *Franks* in § 1983 Fourth Amendment malicious prosecution claims.[6] *See Kelly*, 21 F.3d at 1554 (holding that in a § 1983 action alleging malicious prosecution under the Fourth Amendment, *Franks* "prohibits an officer from making perjurious or recklessly false statements in support of a warrant." (citing *Franks*, 438 U.S. at 165–71)); *Carter v. Gore*, ___

---

[6] Although *Franks* involved a search warrant, the Eleventh Circuit in *Kelly* applied its rule in a case challenging an arrest warrant as improperly obtained. *See* 21 F.3d at 1554.

F. App'x ____, No. 13–11629, 2014 WL 783151, at *5 (11th Cir. Feb. 28, 2014) (dismissing for failure to state a § 1983 malicious prosecution claim based on an alleged violation of *Franks* because the plaintiff failed to "allege facts to plausibly suggest that [the affiant-officer] did not believe or appropriately accept as true his ultimate assertion that [the plaintiff] was guilty").   In *Kelly*, a police officer submitted an affidavit for an arrest warrant against the § 1983 plaintiff for possession of cocaine, notwithstanding that there was evidence that the officer knew that the state crime lab had issued a report that the substance the plaintiff possessed was not a controlled substance.   *See* 21 F.3d at 1548.   The Eleventh Circuit held that the officer was not entitled to summary judgment on qualified immunity grounds.   The officer's "affirmative misstatement violate[d] *Franks*" because "the information she swore to in the affidavit was not 'believed or appropriately accepted by the affiant as true.'"   *Id.* at 1555 (quoting *Franks*, 438 U.S. at 166).

The focal point for the *Franks* analysis is on Officer Ingram's knowledge – whether he actually knew that the statements he submitted in support of the arrest warrant were false or whether he acted with reckless disregard for the statements' truth.   To satisfy his initial burden on summary judgment, Officer Ingram relies upon his deposition testimony and declaration, as well as the informant's declaration.   Namely, Officer Ingram provides testimony that he "never pressured

or coerced [the informant] to make a false statement against" Mr. Williams, that the informant had been reliable in the past and on the day in question had relayed a detailed narrative of the robbery, and that he "believed" the informant "when he reported the robbery to" him. (Ingram's Decl. ¶ 18 (Doc. # 24-4).)   The informant also declares that neither Officer Ingram nor anyone else "has ever pressured or coerced [him] to make a false statement against [Mr.] Williams."  (Informant's Decl. ¶¶ 15–17 (Doc. # 24-3).)  This evidence satisfies Officer Ingram's summary judgment burden.

Although the motion-to-dismiss stage Mr. Williams's allegations of a coerced, fabricated statement survived Rule 12(b)(6) review, at the summary judgment stage Mr. Williams must do more than rely on allegations.  Mr. Williams must point to "evidence beyond the pleadings" that shows a genuine dispute of material fact as to his § 1983 malicious prosecution claim.  *Celotex*, 477 U.S. at 324.  He fails to do so for two primary reasons.

First, Mr. Williams vehemently denies that he robbed the informant, and he insists that the informant is lying.  (*See* Pl.'s Dep., at 100.)  For purposes of the *Franks* analysis, it can be assumed that the informant's account of the robbery actually was false and that no robbery occurred.  On this record, that assumption alone would not rise to the level of a *Franks* violation.  *See Franks*, 438 U.S. at 165 (Although statements in a warrant affidavit must be "truthful," "truthful"

does not mean that "every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants"; rather, the statements must be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."); *see also id.* at 171 ("The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant"); *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009) (To show a *Franks* violation, "[i]t is not enough to show that an informant lied to the government officer, who then included those lies in the [criminal] complaint.").

Based upon the foregoing authority, Mr. Williams's denial of the crime is not evidence that Officer Ingram knew the informant's account of the robbery was false when he submitted those statements to the magistrate. Accordingly, even accepting the premise that the informant lied to Officer Ingram, there must be evidence from which to infer that Officer Ingram knew that the informant had lied or that Officer Ingram acted with reckless disregard for the truth.

This brings the analysis to Mr. Williams's second contention, which requires close scrutiny of evidentiary rules. Mr. Williams argues that his deposition testimony contains evidence of knowing fabrication on Officer Ingram's part. (*See generally* Pl.'s Summ. J. Br., at 2, 5, 6, 9.) At his deposition, Mr. Williams

testified that the informant told him that he [the informant] had pending bad check charges and that Officer Ingram "was on . . . him about what he needed to do in order to get" the charges dismissed.   (Pl.'s Dep., at 96 (Doc. # 28-1).)   The deposition continued as follows:

> Q.      Did [the informant] tell you that he reported to Tim Ingram that you had robbed him?
> A.      I don't . . . recall h[im] telling me that exactly.
> Q.      What do you recall him telling you?
> . . .
> A.      I remember him telling me that . . . he had to do it or he was going to get twenty years.
> Q.      That he had to report you for robbery?
> A.      Yes.  Or he's going to get twenty years.
> Q.      Did he explain how that worked?
> A.      He just said he was being threatened.
> Q.      Did he say who was threatening him?
> A.      Yes.
> Q.      What did he say?
> A.      He said Tim Ingram.

(Pl.'s Dep., at 98–99.)  Officer Ingram argues that Mr. Williams's testimony about what the informant told him is inadmissible hearsay that cannot be used to defeat summary judgment.  (Def.'s Summ. J. Reply, at 2–3 (Doc. # 31).)  Officer Ingram is correct.

 "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment."[7]  *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th

---

[7] Federal Rule of Civil Procedure 56(c)(4) provides that "an affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge [and] set out facts that would be admissible in evidence."  In *Macuba*, the Eleventh Circuit held

Cir. 1999) (internal footnote and quotation marks omitted); *see* Fed. R. Evid. 801(c) ("'Hearsay' is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). At the summary judgment stage, a court may consider a hearsay statement if it "could be reduced to admissible evidence at trial or reduced to admissible form." *Id.* at 1323 (citation and internal quotation marks omitted). As elaborated upon in *Macuba*,

> [C]ourts have used the phrases "reduced to admissible evidence at trial" and "reduced to admissible form" to explain that the out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose. For example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence).

193 F.3d at 1323–24.

Moreover, where there are two layers of hearsay, both layers must be excepted from the hearsay rule for the statement to be admissible. *See* Fed. R. Evid. 805 (providing that "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an

---

that this procedural rule "also applies to testimony given on deposition." 193 F.3d at 1323. An out-of-court statement made to an affiant, a declarant, or a deponent, therefore, is "admissible in evidence" only if it is "admissible at trial for some purpose." *Id.* Mr. Williams has personal knowledge of what the informant told him, but does not have personal knowledge of what Officer Ingram told the informant. As discussed, the evidence cannot sustain Mr. Williams's summary judgment burden because it is not admissible in evidence within the meaning of Eleventh Circuit case law.

exception to the rule"); *see also United States v. Pendas-Martinez*, 845 F.2d 938, 942–43 (11th Cir. 1988) ("[E]ven if one level of double-hearsay statement was not hearsay under Rule 801(d)(1)(B), second level of hearsay was not excepted from rule and document was inadmissible" (citing *S. Stone Co. v. Singer*, 665 F.2d 698, 703 (5th Cir. Unit B Jan. 1982)).  And "[f]or the purposes of the hearsay-within-hearsay principle expressed in rule 805, 'non-hearsay' statements under rule 801(d) . . . should be considered in analyzing a multiple-hearsay statement as the equivalent of a level of the combined statements "that conforms with an exception to the hearsay rule." *United States v. Dotson*, 821 F.2d 1034, 1035 (5th Cir. 1987) (citing *S. Stone Co.*, 665 F.2d at 698); *accord Pendas-Martinez*, 845 F.2d at 943.

Mr. Williams's testimony about what the informant said and, in particular, what the informant said Officer Ingram said, if admissible at the summary judgment stage, is pivotal for proving his theory that Officer Ingram lied about the facts establishing probable cause for Mr. Williams's arrest for first-degree robbery. But Mr. Williams's testimony contains two levels of hearsay:  The informant said (first layer) that he fabricated the robbery and that Officer Ingram told him (second layer) that he had to do so to secure a dismissal of the bad-check charges.

In his summary judgment briefing, Mr. Williams does not assert any basis for admitting either the informant's or Officer Ingram's statements.[8]   Officer Ingram's statement would be admissible as non-hearsay under Rule 801(d)(2)(A) as an admission of a party opponent.   *See* Fed. R. Evid. 801(d)(2)(A).   However, "the mere fact that one level of a multiple-level statement qualifies as 'non-hearsay' does not excuse the other levels from rule 805's mandate that each level satisfy an exception to the hearsay rule for the statement to be admissible." *Dotson*, 821 F.3d at 1035.   Even though Officer Ingram's statement to the informant qualifies as non-hearsay under Rule 801(d)(2)(A), Mr. Williams seeks to offer that statement through the informant, but he does not argue any grounds upon which the informant's statement can be reduced to admissible form.   And Officer Ingram argues that the Eleventh Circuit's decision in *Jones v. UPS Ground Freight*, 683 F.3d 1283 (11th Cir. 2012), demonstrates that there are no such grounds.

In *Jones*, the Eleventh Circuit applied *Macuba* at the summary judgment stage to exclude a declarant's hearsay statement where that statement contradicted the declarant's sworn testimony given during the course of discovery.   The court explained that "[t]he most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at

---

[8] Mr. Williams omits entirely any discussion of this hearsay problem in his summary judgment briefing.

trial." *Id.* at 1294. "If, however, the declarant has given sworn testimony during the course of discovery that contradicts the hearsay statement, [the court] may not consider the hearsay statement at the summary judgment phase." *Id.* In that instance, "[t]he possibility that the declarant might change his sworn deposition testimony and admit to the truth of the hearsay statement amounts only to a suggestion that admissible evidence might be found in the future, which is not enough to defeat a motion for summary judgment." *Id.* (citation and quotation marks omitted).

Although some of the facts in *Jones* are distinguishable,[9] the facts here converge with those in *Jones* in at least one material respect: The declarant's out-of-court statement contradicts the declarant's sworn testimony given during the

---

[9] In *Jones*, the plaintiff was trying to contradict his own deposition testimony by relying upon an email in which his supervisor informed the human resources manager that the plaintiff had told him that unnamed co-workers made racial statements "to him all the time." 683 F.3d at 1293. The Eleventh Circuit observed that the statement was hearsay (of many kinds) "to the extent it is used to prove the truth of the matter asserted – *i.e.*, that 'they make racial remarks to him all the time.'" *Id.* The issue was whether the statement's "inadmissibility at trial prevents [the plaintiff] from relying upon it to defeat [the defendant's] summary judgment motion." *Id.* The court noted that, at best, the statement might be admissible under an exception to the hearsay rule for the limited purpose of demonstrating that the defendant was aware that the plaintiff had complained about racial incidents. *See id.* at 1293 n.35. But, even in that scenario, the jury would not have been able to "consider the statement as evidence that the racial remarks were in fact made." *Id.* In *Jones*, no assumption could be made that the plaintiff would testify in conformity with the hearsay statement in the email because at his deposition, the plaintiff expressly contradicted the hearsay statement. *See id.* at 1294. On that basis, the court concluded that the plaintiff could not use the hearsay statement in the email to defeat summary judgment. *See id.* An additional reason, not present in this case, also required the hearsay statement's exclusion. As the Eleventh Circuit observed, "There is another and, perhaps, more fundamental reason why the [plaintiff's] statement in [the] email should not be considered in deciding summary judgment." *Id.* at 1294–95. "[W]e [have] held that we should not consider for summary judgment purposes even non-hearsay testimony of a witness that is more favorable on a factual issue than the nonmoving party's own testimony." *Id.* at 1295.

course of discovery.  Here, as in *Jones*, the informant provides testimony in his declaration that directly contradicts the out-of-court statements that Mr. Williams attributes to him.  Namely, the informant declares that "Officer Ingram has never pressured or coerced [him] to make a false statement against [Mr.] Williams[,]" and that he [the informant] "ha[s] never made a false statement against" Mr. Williams.  (Ingram's Decl. ¶ 15.)  Based upon *Jones*, it cannot be assumed at the summary judgment stage that the informant will change his sworn declaration testimony and testify at trial in conformity with the hearsay statement, and "[t]he possibility that [the informant] might change his sworn . . . testimony . . . is not enough to defeat a motion for summary judgment."  *Jones*, 683 F.3d at 1294.

Mr. Williams also has not demonstrated that the informant's out-of-court statement would be admissible at trial on any other grounds for the truth of the matter asserted.  Mr. Williams has not contended that the informant's out-of-court statement fits within one of the exceptions to the hearsay rule, *see* Fed. R. Evid. 803, 804, or is non-hearsay under Rule 801(d), and he has not otherwise laid a foundation for the admissibility of the informant's statements.  Mr. Williams might testify at trial as to the informant's out-of-court statements to impeach the informant's contrary trial testimony.  While the informant's hearsay statement might be admissible in that instance for the limited purpose of impeachment, impeachment evidence is not substantive evidence, *see Macuba*, 193 F.3d at 1323–

24; *Jones*, 683 F.3d at 1293 n.35, and the possibility that the informant might be impeached by his hearsay statement at trial "amounts only to a suggestion that admissible evidence [for a limited, non-substantive purpose] might be found in the future, which is not enough to defeat a motion for summary judgment." *Id.* (citation and quotation marks omitted). In sum, Mr. Williams's testimony about the informant's out-of-court statements is inadmissible hearsay that cannot be considered at the summary judgment stage.

Mr. Williams is left only with his summary judgment briefing that relies on conclusory allegations of fabrication on Officer Ingram's part, unsupported by evidentiary facts. However, it is well established in this circuit that "conclusory allegations without specific supporting facts have no probative value." *Myers v. Bowman*, 713 F.3d 1319 (11th Cir. 2013) (citation and internal quotation marks omitted); *see also United States v. Cardona*, 302 F.3d 494, 497 (5th Cir. 2002) ("[A]rguments in brief are not evidence."). In sum, Mr. Williams submits no admissible evidence from which it can be inferred that Officer Ingram lied in the sworn statement he presented to the magistrate to obtain an arrest warrant for Mr. Williams on a first-degree robbery charge. Accordingly, Mr. Williams fails to raise a genuine dispute of material fact on his § 1983 malicious prosecution claim predicated on the theory that Officer Ingram fabricated evidence in violation of *Franks*.

### 3.   *Reliability of the Information Provided by the Informant*

The inquiry should be over, but in his summary judgment briefing, Mr. Williams argues an alternative basis for denying summary judgment on his § 1983 malicious prosecution claim.  He contends that "no reasonable officer could have found probable cause under the totality of the circumstances" based solely on the informant's statement that Mr. Williams had robbed him.  (Pl.'s Summ. J. Br., at 12 (citing *Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003).)  This theory is that the informant's information cannot supply probable cause because the informant was, among other things, a drug addict with a criminal history.  (Pl.'s Summ. J. Br., at 4, 6, 12–13.)

Information provided by a confidential informant can be sufficient to supply probable, so long as the information satisfies the test enunciated in *Illinois v. Gates*, 462 U.S. 213 (1983).  In *Ortega v. Christian*, 85 F.3d 1521 (11th Cir. 1996), the Eleventh Circuit explained,

> [The plaintiff] argues that informant information alone cannot sufficiently support a finding of probable cause.  In determining whether an informant's tip rises to the level of probable cause, we assess the totality of the circumstances.  *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992); *United States v. Campbell*, 920 F.2d 793, 796–97 (11th Cir. 1991).  We consider the relevance of factors such as the informant's "veracity," "reliability," and "basis of knowledge."  *Gonzalez*, 969 F.2d at 1003 (citing *Illinois v. Gates*, 462 U.S. 213, 230 . . . (1983)).  In addition, the corroboration of the details of an informant's tip through independent police work adds significant value to the probable cause analysis.  *Gonzalez*, 969 F.2d at 1003.

24

*Id.* at 1525. "When the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate." *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990).

The court has little trouble concluding that the material facts, viewed in the light most favorable to Mr. Williams and in their totality, demonstrate that the informant's account of the robbery establishes probable cause for Mr. Williams's arrest for first-degree robbery.[10]   First, the informant had assisted the Abbeville Police Department as an informant for controlled buys in the past and had proven reliable in that role.   (Ingram's Decl. ¶ 4; Ingram's Dep., at 99; Confidential Informant Agreement.)   Second, based upon the informant's past performance, Officer Ingram testified that he could conceive of no reason to believe that the informant was not truthful when he reported that Mr. Williams had robbed him during the intended controlled drug buy.   (Ingram's Dep., at 99.)   Third, the informant did not provide cursory information about the robbery.   Rather, he provided a detailed statement to Officer Ingram explaining exactly how the robbery had transpired (Ingram's Decl. ¶¶ 8–16), and Officer Ingram accompanied the informant to the scene to confirm the area where the robbery allegedly

---

[10] Officer Ingram has emphasized that the informant was a victim of robbery on the day in question, not just an informant, and that "[g]enerally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." *Myers v. Bowman*, 713 F.3d 1319, 1326–27 (11th Cir. 2013) (citation and internal quotation marks omitted). The court nonetheless has examined the evidence, viewed in the light most favorable to Mr. Williams, under the *Illinois v. Gates* standard.

25

occurred.  Fourth, the basis of the informant's knowledge was his own personal observation and occurred after Officer Ingram had knowledge of a pre-arranged meeting between the informant and Mr. Williams for purposes of a controlled drug buy.  *See Gates*, 462 U.S. at 234 ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case."); *cf. United States v. Reyes*, 792 F.2d 536, 539 (5th Cir. 1986) ("[A]n informant's tip is buttressed by the fact that it is based on his own personal observation rather than on hearsay.").

Mr. Williams argues, however, that there are a multitude of shortcomings in Officer Ingram's reliance on the informant's information to establish probable cause and that these shortcomings create a genuine dispute of material fact for trial. The alleged shortcomings include the following.  Officer Ingram knew that the informant had "several arrests in the past on drug offenses" and "was in that business."  (Ingram's Dep., at 26; Pl.'s Summ. J. Br., at 2.)  Officer Ingram knew that the informant had pending bad check charges at the time of the alleged robbery.  (Pl.'s Dep., at 96.)  The search of Mr. Williams's residence on September 10 did not result in the recovery of any incriminating evidence – not the cell phone, not the $20 bill, and not any other contraband.  (Pl.'s Summ. J. Br., at 3.)  The robbery allegedly occurred in "broad daylight" in a "business district."  (Pl.'s

Summ. J. Br., at 4 (citing Ingram's Dep., at 79).)  And lastly, the informant was not successful on a prior occasion in purchasing drugs from Mr. Williams in an attempted controlled buy.  (Pl.'s Summ. J. Br., at 4 (citing Ingram's Dep., at 39).)

Mr. Williams's arguments have been carefully considered; however, in light of the evidence, the arguments are insufficient to create a genuine dispute of material fact on the issue of whether Officer Ingram could rely on the informant as the basis for probable cause.  First, the fact that the informant has a criminal past does not make him unreliable.  A law enforcement agency would be hard pressed to find an informant who did not have a criminal history.  As the Sixth Circuit aptly has observed,

> Considering that it is often people involved in criminal activities themselves [who] have the most knowledge about other criminal activities . . . , it is no surprise that most confidential informants are [or have been] engaged in some sort of criminal activity.  It would unduly hamper law enforcement if information from such persons were considered to be incredible simply because of their criminal status.

*United States v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008).  Second, the search of Mr. Williams's home occurred after Officer Ingram had obtained the arrest warrant, so the failure of the search to reveal any incriminating items was not known to Officer Ingram at the time he evaluated the informant's statement about the robbery.  Third, as to his contention that the robbery occurred in broad daylight, Mr. Williams does not explain how this fact raises a genuine issue of

material fact.  Daylight hours are not immune from crime.  Fourth, the record does not support the argument that Mr. Williams robbed the informant in a "business district."  Rather, the evidence demonstrates that the informant reported that Mr. Williams robbed him, after the two had driven around in Mr. Williams's pick-up truck and Mr. Williams had parked on the side of a residential street.  (Ingram's Decl. ¶¶ 10–11; Ingram's Dep., at 79.)  Fifth, the evidence that Mr. Williams cites about a prior attempted controlled drug buy reveals that Mr. Williams "didn't show up" to meet the informant on August 17, 2007 (Ingram's Dep., at 39), and Mr. Williams does not demonstrate how this fact creates a genuine issue for trial whether Mr. Williams robbed the informant the next month, on September 7.

In sum, Mr. Williams has not demonstrated that the totality of the circumstances raises a genuine dispute of material fact as to Officer Ingram's reliance on the informant's report of the robbery as the basis for probable cause. "[T]he existence of probable cause defeats a § 1983 malicious prosecution claim." *Grider*, 618 F.3d at 1256.  Alternatively, at the very least, the summary judgment facts demonstrate arguable probable cause sufficient to confer qualified immunity on Officer Ingram.[11]  Accordingly, Officer Ingram's motion for summary judgment is due to be granted on Mr. Williams's § 1983 malicious prosecution claim.[12]

---

[11] As to the threshold qualified immunity question, there is no dispute that Officer Ingram was acting within his discretionary capacity when he sought a warrant for Mr. Williams's arrest for first-degree robbery.  *See Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (The

## B.   State-Law Malicious Prosecution Claim

Under Alabama law, as under § 1983, a plaintiff must show the absence of probable cause.[13]   *See Wal-Mart Stores, Inc. v. Goodman*, 789 So. 2d 166, 174 (Ala. 2000); *accord Grider*, 618 F.3d at 1256 (observing that the absence of probable cause is an element of malicious prosecution under § 1983 and Alabama law).   Mr. Williams's state-law malicious prosecution claim cannot survive summary judgment for the same reason that his § 1983 malicious prosecution claim cannot, namely, because Mr. Williams fails to raise a genuine dispute of material fact that his arrest lacked probable cause.[14]

Alternatively, on the summary judgment facts, Officer Ingram is entitled to state-agent immunity under Alabama law because the evidence establishes that he was engaged in the performance of a discretionary function during the events in question and had at least arguable probable cause to apply for the arrest warrant,

government actor is acting within his discretion if "his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." (citation and internal quotation marks omitted)).

[12] Based upon this finding, it is unnecessary to address Officer Ingram's additional arguments for summary judgment, including those that rely on the doctrine of collateral estoppel.

[13] Even though Mr. Williams's underlying federal-law claim does not survive summary judgment, the court retains authority to exercise supplemental jurisdiction pursuant to § 1367 over Mr. Williams's state-law claim that arises from the same facts.   *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1567 (11th Cir. 1994).

[14] This failure of proof also demonstrates the absence of evidence of malice.   *See Wood*, 323 F.3d at 884 (observing that as to the malicious prosecution under Alabama law, "the existence of probable cause, and in particular the facts showing that probable cause, contradict any suggestion of malicious intent or bad faith").

and there is no evidence that Officer Ingram acted in bad faith, maliciously, or willfully.  *See generally Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000) (discussing state-agent immunity); *cf. Borders v. City of Huntsville*, 875 So. 2d 1168, 1180, 1182 (Ala. 2003) ("Although this Court has not directly addressed the issue of the relationship between probable cause and discretionary-function immunity, we agree that the standard of 'arguable probable cause' should govern further proceedings in this case.").  Accordingly, Officer Ingram's motion for summary judgment is due to be granted on the state-law malicious prosecution claim.

## V.  CONCLUSION

Based upon the foregoing, it is ORDERED that Officer Ingram's motion for summary judgment (Doc. # 23) is GRANTED.

A final judgment will be entered separately.

DONE this 2nd day of May, 2014.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE
